And we'll hear argument next in Barr v. City of White Plains, 18-1348. Good morning, your honors. May it please the court. I come here today to argue on behalf of the plaintiffs who are retired police officers in the City of White Plains. I come here to argue basically three points that the court below had erred. We think the court below erred in regarding that the section 29-5 of the collective bargaining agreement, a fair reading of that document or that paragraph would show that it is ambiguous. I also would like to argue to this court that there was no legitimate public purpose for the May 24th resolution. And finally, I'd like to argue to this court that there is a valid 14th amendment claim that I think exists in this case.  Your honors, if you take a look at the clause which we say is an ambiguous clause in paragraph 29, the clause says it is understood and agreed that all the employees' rights and benefits which are terms and conditions of employment and which are presently enjoyed and not specifically covered in an agreement shall be maintained. That to us, we believe that that is a very ambiguous clause because it doesn't set forth . . . Are you arguing that terms and conditions of employment is used in that section? Yes, your honor. Does it mean the same thing that it does in the Taylor law? No. You see, your honor, I think the judge . . . that was a reach. I don't think it means that. And I think that the reason why it comes to that is because under the Taylor law, this was a purely a past practice that had been expanded and by an agreement, there was a retitling of what it actually was as opposed to being just a past practice. There is no doubt that in this case, all of the employees had been hired that they had been told. And the judge never looked at any extinguished evidence, but it's clear that all the people who testified in this case said they had been told that they were receiving less money because they were going to get benefits in their retirement. And that's in the record. We have that in the record. So I do not think that the Taylor law applies to this clause. That's the position that we take. Does that mean that people are employees after they retire? Well, I think . . . The language is talking about employees. I'm sorry, your honor. The language is talking about employees, people who are retired. Right. Or annuitants, retirees, whatever they are, but they're not employees. Try to get them to go to work. Right. I think that in this case . . . I always believe in law that when there's something done that's wrong, there's got to be a recourse. In this case, I think that's the case. That would keep us very busy. I know. Thank God, right? But, your honors, I think here that when these gentlemen retired and these ladies retired, they had a benefit. They were paid that benefit. I know estoppel doesn't work against the municipality. I get it. But they had a benefit. They had a retirement. Some of these people with . . . You know, it sounds like nothing, 15 percent of your income. Sounds like . . . of the benefit. It turned out that some of these people who had retired who were younger, it was eating up 60, 70 percent of their retirement benefit. That little small 15 percent. So, that gentleman is deceased at this point. He's 97 years old when he died. But, all I'm saying to the court is that they retired and they had this paid practice. They had this as an employee. And, I think that for them to be able to be later on, to be disenfranchised with this benefit that they all knew they had, that the city made no bones about giving them, that the city had pamphlets when you retired that said, hey, you get this in your retirement forever. Are all of the appellants similarly situated? That is, are all the appellants, did all of them retire under the collective bargaining agreement that used the post-1983 wording? Yes. Okay. Yeah, those are the ones. And, that's why . . . There's no one . . . there's no appellant that's outside of that category. That's correct, Your Honor. And, that's why I say, and it wasn't until into the case for a little bit that we asked the court for an amendment, which was graciously given for the 14th Amendment. Because, I don't see a difference between these people, these groups of officers. They're all working. We made a list in our brief of the things that they did similarly. And, the judge came back. And, the judge said, well, wait a minute. They didn't collectively bargain. They didn't give up their salary. They didn't submit to drug testing. Well, that's really two insignificant issues. They were hired at lesser rates. There's no dispute in this case that the police officers in White Plains that we represent were hired at lesser rates than people in Scarsdale and Bronxville and surrounding communities. Mr. Murray, you're making two arguments or two claims that are before us on appeal. One is the Contracts Clause claim and the other is the Equal Protection claim. There are no other claims. Is that correct? On appeal. No, the 14th Amendment claim. Well, the Equal Protection claim. Yes. Okay. So, those are the only two claims on appeal before us. Is that correct? You're not making a breach argument? You're just making a Contracts Clause impairment argument? Yes, a Contracts Clause and because the rest would be state law claims. Why don't you address, then, the Contracts Clause? I think you were getting to that. Okay. So, the Contracts Clause, I think that there is an argument here that we would like to proffer to the court that in the Contracts Clause, there was an obligation on the municipality to continue their payments into retirement. There was no legitimate public purpose for enacting the May 24, 2010 resolution. One of the arguments that was made in the court below. We have said that the legislative interest in addressing a fiscal emergency is a legitimate public interest. But there was no fiscal emergency. That's my point. You dispute that. I dispute that because the bond rating by Moody's, which is probably one of the better ways to decide. You know, there are some municipalities, Buffalo, for instance, had huge deficits. Their bond rating went terribly low. In this case, the bond rating for the Citywide Play was 1A1, 8A1, throughout the entire time. From when the alleged crisis started until it ended and probably up to today, I don't know. So, we say that there was. Weren't they facing a possibility of having to raise, I think, property taxes by 10%? There was a talk of that. And in our brief, the name escapes me. We had submitted in our summary judgment motion. We had escaped me. There was a woman who was in charge who had worked for the Citywide Plains who said that all of these issues were dismissed by the time this proclamation, this resolution was passed in 2010. I can look for it if I have to. But my point is that the bond rating never changed. Maybe there would have had to have been a raise in taxes, okay? But that was all talk. It never came to fruition, and there was never a change in the bond rating. Maybe this measure is one of the things that preserved a sound bond rating for the city. Well, I don't think so, Your Honor. And I don't think that the small amount of money that this meant on a $110 million budget, this $1 million, which is about what this would have cost, is really significant insofar as that's concerned. So I point out to the fact that in the contract clause, had the judge looked to the extrinsic evidence to some extent, they would have seen the statements made by Eric Benson and William Carey, people who had said that past practices percentage was being enjoyed as the retirees would continue. And all of these statements, we put some of these in our brief for the court. So we think that the judge should have taken that next step and looked at the intrinsic evidence, which I think would have been very important for her to review. I don't know if you ever waived this contract clause argument. I don't see it in your brief. No, it's point two, Your Honor, I believe. And also, I think point one and point two both sort of go to the contract issue. Okay, I see. And then finally, if the court has any questions about the 14th Amendment claim, I'd be happy to address that, but I'm a little on time. Thank you. Thank you, Your Honor. Good morning. May it please the court. My name is Richard Zuckerman from Lamb & Barnosky, and I represent the city of White Plains and the other defendants, also appearing as my co-counsel, Lalit Lumba from Wilson-Elser. I'll be addressing the issue with regard to the contract, or more specifically, the lack of a contract here. Mr. Lumba will be addressing the other issues. Your Honor, to the extent that the breach of contract issue is actually before the court, and Judge Park, you correctly note, as we have pointed out, that there's a question as to whether that was waived, what the plaintiffs are asking the court to do is to write into the contract that they already retired under a sentence that does not appear. That sentence is the city of White Plains will pay 100% of the premium costs of retiree health insurance for employees hired before July 1, 1995. That provision is not in this contract. There is a provision, as you know, that talks about people hired after July 1, 1995. But what they're asking for doesn't exist. They asked for it during the course of collective bargaining on three different occasions. On each of those occasions, the city said no. With regard to section 29 sub 5, it is not a past practice clause for the reasons that we argue within our brief. Instead, it is a rights and benefits clause. And as the court has noted, there are basically five things that plaintiffs have to establish, none of which they've established. First off, it applies only to employees, not to retirees. Second off, it applies to rights and benefits. I will come back to that. Third, it has to be a right and benefit presently enjoyed. Employees, by definition, cannot enjoy a retirement benefit. Employees can enjoy benefits that are not specified in the contract. That's why the language talks about presently enjoyed. The union tried on several occasions to expand that clause during collective bargaining to say that the protection would cover past practices. The city said no. Previously enjoyed practices and benefits, the city said no. And future benefits, and the city said no. It has to cover a term and condition of employment. Judge Jacobs, you're 100% correct. That is a term of art. It explicitly relates to the Taylor Law found in the Civil Service Law at Section 200 at SEC. That's where that comes from. And perhaps even more importantly, the contract provision requires the right and benefit to be specifically, not specifically, covered by the contract. It's undisputed that the contract addresses health insurance, and the contract addresses retiree health insurance. Finally, Your Honors, the court did address the parole evidence in its decision. It's all over the decision. Judge Seibel addressed that, and in the alternative, after finding the contract language was in fact unambiguous. So unless the court has any other questions for me, I will turn it over to Mr. Lumba. Mr. Lumba. Thank you. Thank you. Good morning, Your Honors. May it please the court, my name is Lallet Lumba, co-counsel for the defendants. My part here is to address the Contracts Clause Claim and the Equal Protection Claim. As a preliminary matter, if a contract doesn't exist, then the Contracts Clause Claim is going to fail. And so for the reasons that Mr. Zuckerman has just discussed and established, there is no contract. And that constitutional claim would not prevail for that matter. If we assume the existence of the contract, then the Contracts Clause Claim will fail for two reasons. The first is not mentioned by the plaintiffs in their opposition to our motion for summary judgment. They didn't mention it in their appellant's brief. He didn't mention it this morning. And that is the difference between a constitutional impairment of contract and a breach of contract. Is there anything wrong, by the way, with us dealing with the constitutional claim rather than the contract claim? Well, that's a very interesting question, Your Honor. The only reason we're in federal court is because they pled a constitutional claim. As I heard it from Mr. Maria, the only issues before us are the Contracts Clause Claim and the Equal Protection Claim. So two constitutional claims, not the contract interpretation. Well, Your Honor, I think the contract is an issue before the court because it is a fundamental prerequisite of that first constitutional claim. The existence of a contract. Right. I mean, even before you get to the question of does the legislation impair a contract, you have to first reach the question, is there a contract to begin with? I understand that, but I'm asking a slightly higher order question about whether we've got to deal with that first question of whether there's a contract before we deal with the Contracts Clause constitutional question. I would say not necessarily, Your Honor, because the Contracts Clause Claim could fail on other reasons. Sure. I understand the argument. I'm just, you don't have a view. In my view, because they haven't established the existence of a contract, that the Contract Clause Claim should be rejected on that first ground right there. And the entire case would be dismissed at that point. With the exception, I suppose, there's going to be consideration of the Equal Protection Claim. But I think the court can easily rule and dismiss or affirm the dismissal of the Contracts Clause Claim by coming to the conclusion, based upon the record and the arguments, that there was no contract that guaranteed these particular plaintiffs 100 percent free health insurance and retirement for the rest of their lives. And in the absence of that contract, his constitutional claim for violation of the Contracts Clause would fail. If you assume the existence of that contract, the constitutional claim still fails for two reasons. One is that the legislation in question here, which is the May 2010 Ordinance, does not impair a contractual obligation. It doesn't say to the plaintiffs, if you believe that your contract, and we're assuming one exists, was breached, you have no recourse in court for breach of contract. And so when all a plaintiff has is a breach of contract and not a claim that a particular piece of legislation foreclosed, a remedy for breach of contract, then the Contracts Clause Claim would fail on that ground. Isn't that the same thing as saying there's no contract? Not necessarily, Your Honor, because if the contract exists and a piece of legislation creates a breach, an alleged breach of that contract, the legislation can either say, you can't go forward at all, there's no remedy to begin with, or go ahead and sue. And if you can establish the existence and a breach and all the other elements for a breach of contract claim under state law, then you would prevail. So in this particular case, the ordinance does not impair the contractual obligation. There's nothing in the ordinance that says these plaintiffs can't sue, make a state law claim for a breach of contract. So it permits the appellants to recover damages if they prevail on a breach of contract? In theory, if they prevail, Your Honor, yes, they would. But of course, we say there's no, the contract doesn't exist, so they would fail on that ground. The second, so that's the first point in terms of the constitutional claim. There's no impairment of contract. At the most, there's a potential breach of contract, and therefore it should be dismissed on that ground. Second, just to address the legitimate public purpose and the reasonable means test, unless Your Honor has questions. I'll give you 30 seconds, go ahead. Okay. There was the great recession. I think the court can take judicial notice of it. The city of White Plains, like many municipalities, was teetering on the brink of a major financial crisis. And it took a series of steps to deal with that. It did maintain its good credit rating, but it did that as a result of taking prudent fiscal measures to keep itself from falling over a fiscal cliff. As I understand, with respect to Moody's, Moody's changed its outlook, not the rating, from stable to negative. And then it was a four-year period of a negative outlook before it returned its outlook to stable for the city of White Plains. That is correct, Your Honor. 2013 was when it went from a negative outlook to a stable outlook. Okay. Real quick on the Evil Protection Clause. That claim is not directed at the 2010 ordinance. That claim is directed at a collective bargaining agreement that was reached in approximately 2015. It had a term of 2012 to 2018. It's undisputed. None of the plaintiffs here were employees of the city when that collective bargaining agreement was reached. That collective bargaining agreement, there were some significant trade-offs. There was a new procedure for establishing benefits under Section 207C of the general municipal law, which would allow firefighters injured on the job to get certain benefits. There was a random drug testing program. There were lower starting salaries for new hires. The current employees, as of 2015, were all in a position to give those trade-offs up in exchange for benefits under the agreement. The plaintiffs were not. So they're not similarly situated under that. And for that reason and the additional reasons we state in our brief, the Equal Protection Clause would claim to fail. Thank you very much. Thank you, Your Honor. We'll reserve the decision.